IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| MARIO GOMEZ,<br><br>     Plaintiffs,<br><br>  vs.<br><br>SHELBY PRISON CCC; CHIEF OF UNIT MANAGEMENT HATTON; WARDEN; UNIT MANAGEMENT TEAM CANNON,<br><br>     Defendants. | Cause No. CV 21-099-GF-BMM<br><br><br><br>ORDER |
| MARIO GOMEZ,<br><br>     Plaintiffs,<br><br>  vs.<br><br>SHELBY PRISON CCC; WARDEN; CHAPLAIN; CHIEF UNIT MANAGEMENT TEAM HATTON; UNIT MANAGEMENT TEAM CANNON,<br><br>     Defendants. | Cause No. CV 21-100-GF-BMM<br><br><br><br>ORDER |

On September 22, 2021, the clerk received two letters from Plaintiff Gomez.

In subject matter, the letters overlapped. Each was filed as a civil complaint.

Following a letter from the clerk and a court order, Gomez moved to proceed in

1

forma pauperis with each case. He also submitted an amended complaint in each action. The amended complaints continued to overlap as to subject matter.

On December 9, 2021, United States Magistrate Judge John T. Johnston explained that Gomez's pleadings did not state a claim on which relief might be granted. Judge Johnston gave him an opportunity to amend his pleadings again. He responded on December 28, 2021, by filing a supplement (Doc. 8).[1]

On March 14, 2022, Judge Johnston granted Gomez's motions to proceed in forma pauperis and gave him an opportunity to amend new allegations raised in his supplement. Gomez responded on March 29, 2022 (Doc. 12).

## I. Screening

Because Gomez is a prisoner, the Court reviews the complaint to determine whether it fails to state a claim on which relief may be granted.  *See* 28 U.S.C. § 1915A(a), (b)(1). A federal court must liberally construe pleadings filed by unrepresented prisoners and extend an opportunity to amend where appropriate. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012). Nonetheless, the Court must dismiss a claim when its defects are not cured by amendment. *See* 28 U.S.C. §§ 1915(e)(2), 1915A(b).

---

[1] Reference to a document number without a preceding case number indicates that the document bears the same number in both cases.

## II. Discussion

Gomez brings suit under 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Naffe v. Frey*, 789 F.3d 1030, 1035–36 (9th Cir. 2015). As to each defendant he seeks to hold liable, a plaintiff must also show that the defendant's action or inaction caused or contributed to causing the alleged deprivation of his rights. *See, e.g.*, *Lacey v. Maricopa County*, 693 F.3d 890, 915–16 (9th Cir. 2012) (en banc).

"[A] complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. When a complaint "pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks and citation omitted).

### A. Sexual Harassment

Gomez alleged, first, that Defendant Hatton "was staring" at Gomez's penis as he was urinating in his cell. Gomez told Hatton to leave, but Hatton said he would "not leave till he was done looking at me." Gomez said that, when he

finished urinating, Hatton "pulled his mask down and smiled at me and said if there is anything I need or want to just ask him." Compl. (21-100 Doc. 1) at 1; *see also* Compl. (21-99 Doc. 1) at 1–2; Am. Compl. (21-100 Doc. 5) at 3, 4; Am. Compl. (21-099 Doc. 5) at 3, 4, 7–8. In his supplement, Gomez added that Hatton's actions "carried on for 4 days." He also stated that "if we inmates make a statement" like Hatton's, "we get wrote up." Supp. (Doc. 8) at 1. In another supplement, Gomez alleges that he "feared that Hatton was going to do something much worse than look at me." Supp. (21-100 Doc. 11) at 1–2.

A correctional officer violates the Eighth Amendment if, "without legitimate penological justification," he "touche[s] the prisoner in a sexual manner or otherwise engage[s] in sexual conduct for the staff member's own sexual gratification, or for the purpose of humiliating, degrading, or demeaning the prisoner." *Bearchild v. Cobban*, 947 F.3d 1130, 1144 (9th Cir. 2020); *see also, e.g.*, *Wood v. Beauclair*, 692 F.3d 1041, 1046 (9th Cir. 2012); *Schwenk v. Hartford*, 204 F.3d 1187, 1196–97 (9th Cir. 2000).

Despite his opportunities to amend, the facts Gomez has alleged do not support an inference that Hatton "stared" for his sexual gratification or to humiliate, degrade, or demean Gomez. The allegations are as consistent with a vacant stare on Hatton's part as they are with an instance of ogling. The allegation that Hatton continued his conduct for four days does not alter the outcome. The

4

alleged action was akin to verbal harassment, which generally does not violate the Eighth Amendment. And Gomez has not alleged that Hatton knowingly exploited any special sensitivity of Gomez's. *See, e.g.*, *Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004); *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996); *see also* Order (Doc. 6) at 5–6.

This claim is dismissed.

### B. PREA Claim and Grievances

Gomez stated that he attempted to report the incident with Hatton under the Prison Rape Elimination Act ("PREA") but believed his grievances were intercepted and discarded before they reached the warden. He also stated that he was accused of lying. *See, e.g.*, Compl. (21-100 Doc. 1) at 1; Am. Compl. (21-100 Doc. 5) at 4, 7, 8; Supp. (21-100 Doc. 11) at 2.

The Prison Rape Elimination Act authorizes the reporting of rape, grant allocation, and creation of a study commission. *See* 34 U.S.C. §§ 30301–30309 (formerly 42 U.S.C. §§ 15601–15609). It does not contain a private right of action or create a right enforceable under 42 U.S.C. § 1983. *See, e.g.*, *Gladney v. United States*, 858 Fed. Appx. 221, 223 (9th Cir. 2021) (unpublished mem. disp.), pet. for cert. denied, No. 21-6504 (U.S. Jan. 24, 2022); *Porter v. Jennings*, No. 1:10-cv-1811-AWI-DLB PC, 2012 WL 1434986, at *1 (E.D. Cal. Apr. 25, 2012) (collecting cases); *see also, e.g.*, *Blessing v. Freestone*, 520 U.S. 329, 340–41

(1997) (statutory provision gives rise to federal right enforceable under § 1983 when the statute "unambiguously impose[s] a binding obligation on the States" by using "mandatory, rather than precatory, terms").

In addition, even if prison staff violated policy by discarding Gomez's grievances or kites, their actions did not violate the Constitution. Prisoners have "no legitimate claim of entitlement to a grievance procedure." *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988). Gomez's right to petition for redress of grievances is satisfied by his filing of this action.

This claim is dismissed.

**C. Mail, Legal Mail, and Phone Calls**

Gomez alleged that his legal mail was being opened and read before he received it. *See, e.g.*, Am. Compl. (21-099 & 21-100 Doc. 5) at 3; Compl. (21-99 Doc. 1) at 1. He stated that "letters stating legal stuff about prea and other stuff that I do not want this place reading" were not accepted as outbound legal mail. *See* Compl. (21-99 Doc. 5) at 3; *id.* at 1; Compl. (21-100 at 2); Am. Compl. (21-100 Doc. 5) at 3. He stated that prison staff did not accept his writing to "the courts and lawyers about what's going on and me wanting to open a lawsuit" as legal work or legal mail, *see* Compl. (21-99 Doc. 1) at 1, so that he was "denied getting it signed," *id.* at 3. He said prison staff "want to listen to my legal calls and if they can't listen to them . . . I can not make any calls to a lawyer." *Id.* at 2. He said he

6

tried to send letters to the court and lawyers but was told he could not send them out. *See* Compl. (21-100 Doc. 1) at 2; Am. Compl. (21-100 Doc. 5) at 4. In his supplement, Gomez asserted that his legal mail was delayed for three days and then opened outside his presence. He also stated that Defendant Cannon prevented his legal mail from going out. *See* Supp. (Doc. 8) at 1.

The First Amendment entitles prisoners to correspond with persons outside prison. *See, e.g.*, *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam). Prisoners have a specially protected interest in corresponding with legal counsel. *See, e.g.*, *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1211 (9th Cir. 2017).

On the other hand, prisons have legitimate security interests in reviewing incoming and outgoing mail to ensure that, whatever its label, it does not in fact contain escape plans, contraband, material threatening the safety of the recipient, proposed criminal activity, or coded messages. *See, e.g.*, *Procunier v. Martinez*, 416 U.S. 396, 413 (1974), *limited by Thornburgh v. Abbott*, 490 U.S. 401, 411–13 (1989); *Barrett v. Belleque*, 544 F.3d 1060, 1062 (9th Cir. 2008) (per curiam); *Witherow*, 52 F.3d at 265–66.

Rules governing incoming and outgoing mail balance these interests. A prison may inspect all incoming and outgoing mail for security reasons, but not for the purpose of suppressing expression or inhibiting communication. *See, e.g.*, *Procunier*, 396 U.S. at 413–14. Prison staff may also open and inspect mail

marked as "Legal Mail," but they must not read it. To ensure they do not, the prisoner is entitled to be present when staff open and inspect it. *See, e.g.*, *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006), *followed in Hayes*, 849 F.3d at 1209–11.

Not all communications concerning legal matters are true "legal mail." Notably, mail to or from state or federal courts is not legal mail. *See Hayes*, 849 F.3d at 1211; *Keenan*, 83 F.3d at 1094. An inmate is not entitled to label a letter as "legal mail" simply because it alleges someone has engaged in illegal behavior or because he does not want prison staff to read it.

In the December 9, 2021, order, Judge Johnston advised Gomez that he did not adequately allege that mail addressed to or from his attorney, and properly marked as legal mail, was opened outside his presence. In his supplement, Gomez contended that legal mail was delayed three days and opened outside his presence, but he did not allege facts showing the mail was addressed to or from his attorney or properly marked as legal mail.

Likewise, Gomez contended that Defendant Cannon and possibly others stopped legal mail from going out, read it, and returned it to him. *See* Supp. (Doc. 8) at 1. He also seemed to allege that he was prevented from sending out mail at all. *See, e.g.*, Compl. (21-100 Doc. 1) at 2; Am. Compl. (21-100 Doc. 5) at 4. Gomez was advised he must explain what he was not permitted to mail out, who prevented it and why, and when and where this occurred. *See* Order (Doc. 6) at 8–

9. But he has not alleged facts supporting his characterization of some mail as "legal mail," and he has not explained what he was not permitted to mail out.

Gomez also alleged that he was not permitted to make phone calls unless prison staff could monitor them. He has not alleged that he had a specific need to use a telephone to conduct a legally privileged conversation and could not use legal mail instead. *See, e.g.*, *Keenan*, 83 F.3d at 1092.

These claims are dismissed.

**D. Religious Diet**

Gomez alleged that, on or about August 13, 2021, the chaplain at Shelby told him "that me being Aztec or having Aztec blood is a lie and that Mexicans do not have a religion and if I wanted to fast for my gods that they will have no part in it and that if I need special meals that I have to order it my self." Compl. (21-99 Doc. 1) at 1; Am. Compl. (21-100 Doc. 5 at 4–5) (chaplain said "my religion is fake and me being mexican I don't believe nothing"). He stated that he "can't eat for days on end," Am. Compl. (21-99 Doc. 5) at 5, and also that he has not been "able to fast for my family that passed away and also for the gods I believe in," Am. Compl. (21-100 Doc. 5) at 5. He stated that "Governor Greg Gianforte the Director Brian Gootkin and the wardens in Deer Lodge and Shelby all denied my religious practice and terrie stefalo." *Id.*

As stated above, verbal harassment or incivility, even if rooted in religious

bias or racism, does not violate the Constitution. *See Austin*, 367 F.3d at 1171;

*Keenan*, 83 F.3d at 1092. Gomez's allegations concerning what the chaplain or

head of the Religious Activities Center said to him did not state a claim.

Gomez was advised that his allegation concerning special meal requirements

and inability to fast might state a claim. *See* Order (Doc. 6) at 9. But his

supplement did not explain what his requirements were or how his ability to

practice his religion was affected when they were not met. *See, e.g.*, *Holt v. Hobbs*,

574 U.S. 352, 360–61 (2015).

These claims are dismissed.

### E. Placement in Segregation

In his supplement (Doc. 8), Gomez added that Defendant Cannon "put me in

the hole for no reason" after Gomez said that he could not be housed with gang

members and that he intended to write to the courts about his mistreatment. Judge

Johnston gave him an opportunity to amend this claim as well. *See* Order (Doc. 9)

at 3.

In response, Gomez alleged that Defendants Cannon, Bludworth, and Hatton

knew he could not be housed with "other gang members" because he told them,

when he arrived at Shelby, "that there was a hit out for me." Resp. to Order (Doc.

12) at 1. Gomez was originally placed on the low-security side of the prison.

Within a month, he was told he was moving to the high side. He reiterated that he

could not go there "cause there is a hit out for me." Cannon said, "Oh well, live with it." *Id.* When Gomez asked why he was being moved, Cannon took him to "the hole" (which the Court understands to be segregation) and wrote him up for a major disciplinary violation.

Four days later, Gomez was offered housing on the high side. He declined and was written up again. Gomez wrote a grievance, but officers tore it up. He remained in "the hole" for 20 more days. After that, Gomez was again offered housing on the high side and again declined. Then, Gomez said, he returned to his cell in "the hole" and was talking to another inmate when Cannon again wrote Gomez up for "threatening him." It is not clear whether "him" meant Cannon or the other inmate. *See id*. at 1–2.

Gomez alleged "they put me on Ad Seg levels 1–4 all because they said I was lying." Supp. (Doc. 12) at 1–2. Gomez said he "showed them an email I got stating that there is a hit out on me" and they "still continued to say I was l[y]ing." *Id*. at 2.

Although Gomez originally alleged he was put in the hole "for no reason," his amendment clarified that he was put in the hole for a reason: officers believed he was lying about being in danger. Whether the officers were right or wrong, their belief did not violate the Constitution. Gomez was entitled to file grievances, and officers should not have torn them up. But tearing up a grievance does not violate

the Constitution, *see Mann*, 855 F.2d at 640, and Gomez's allegations support no inference that adverse action was taken against him because he attempted to submit a grievance, *see, e.g.*, *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). The adverse actions came about because no one believed Gomez's claim that he was in danger. Whether Gomez was accused of threatening the other inmate or Cannon, Gomez did not allege any adverse consequence from the write-up. And Gomez's allegations show that he had notice of the reason he was placed in segregation and that his placement was reviewed at reasonable times—after four days and after 20 days—and that he was placed on a graduated plan. *See Brown v. Oregon Dep't of Corrs.*, 751 F.3d 983, 988 (9th Cir. 2014).

Despite an opportunity to amend, the facts Gomez has alleged do not support an inference that anyone retaliated against him, knew he was in danger and subjected him to it anyway, or violated his right to due process. Even if moving to the high side would have put him in danger, he was in fact protected in segregation, and he had no entitlement to remain on the low side. *See, e.g.*, *Moody v. Daggett*, 429 U.S. 78, 88 n.9 para. 2 (1976); *Meachum v. Fano*, 427 U.S. 215, 216 (1976); *Myron v. Terhune*, 476 F.3d 716, 718–19 (9th Cir. 2007).

These claims are dismissed.

**F. Conclusion**

Gomez has amended his pleadings three times. He has not stated a claim on

12

which relief may be granted. These cases are dismissed.

### III. Certification

Gomez's allegations have not crossed the line between possibility and plausibility. Even so, Gomez's forma pauperis status should continue for purposes of appeal. *See* Fed. R. App. P. 24(a)(3).

Accordingly, IT IS ORDERED:

1. Both cases are DISMISSED for failure to state a claim on which relief may be granted.

2. Gomez's filing of these actions counts as one strike against him for failure to state a claim on which relief may be granted.

3. By separate document in each case, the clerk shall enter a judgment of dismissal without further leave to amend.

DATED this 20th day of May, 2022.

_____
Brian Morris, Chief District Judge
United States District Court